NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAROD HARRIS, | : | |
|  | : | Civ. No. 15-1603 (KM) |
| Petitioner, | : | |
|  | : | |
| v. | : | **OPINION** |
|  | : | |
| STEPHEN DILIO, | : | |
|  | : | |
| Respondent. | : | |

**MCNULTY, District Judge**

Before the Court is the Petition for a writ of habeas corpus of Jarod Harris brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons set forth below, Petitioner's habeas petition is DENIED, and a certificate of appealability will not issue.

## I.    BACKGROUND

The following factual summary is taken from the Appellate Division decision, on direct appeal:

> [Petitioner] . . . was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (Count One); third-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b) (Count Two); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count Three). At sentencing, the court imposed an aggregate forty-eight year period of incarceration with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.
>
> The crimes for which defendant was convicted arose out of the January 20, 2003 slaying of Andre Simmons[.]
>
> . . .
>
> The salient facts presented at trial pertinent to our discussion were disclosed by the victim's wife, two witnesses from the scene and defendant's girlfriend. According to the victim's wife, Patricia Simmons, defendant and Simmons had been friends since childhood

but the relationship changed following the slaying of defendant's brother, Larry Harris. Defendant suspected that Simmons had been involved with his brother's murder. Following Larry's death, Patricia witnessed defendant confronting her husband about Larry's death on three occasions, with the last confrontation occurring three weeks before his death. At that time, defendant approached a vehicle in which she was seated with her sister and he began to flirt with her sister. When Simmons approached the vehicle, defendant's demeanor changed and he questioned Simmons about whether he had been involved with his brother's murder. Simmons denied having anything to do with the killing.

Precious King testified that she lived near the crime scene and had gone to a local store around 9:00 p.m. on the evening of the shooting. As she was entering the store, she saw defendant, whom she had known since childhood, arguing with Simmons about Larry's death. She heard Simmons deny any involvement and tell defendant that he was married, had a family, and would not "stoop to that level." She said the argument continued outside while she was in the store and, when she exited, she heard someone tell defendant "that it wasn't worth it." She then entered her vehicle, driven by her husband, and as their vehicle turned right onto 10th Street, she saw Simmons walking away from the area where defendant had confronted him. She proceeded to her house on Kent Street, which runs parallel to Brenner Street. Before entering her house, she heard six or seven shots, went in the direction of the shots she heard and found Simmons on the ground. Defendant was there and she heard him say "something about being Blood for Blood." She also observed defendant holding what appeared to be a pistol. She then saw a "young boy" approach defendant, take the pistol, and say to defendant, "it's not worth it."

Betty Rollins testified that she lived at 15 Brenner Street, which is across from the vacant lot where Simmons was shot. She had known defendant and Simmons for more than a dozen years. Around 9:30 p.m. on the evening of the shooting, she approached the front window on the first floor of her home to see if her cat was there. She peered out the window and noticed Simmons entering the empty lot with defendant approaching Simmons from behind. When defendant reached him, Simmons removed his hands from his pockets and raised his fists as if to defend himself, at which point defendant then began firing shots at Simmons. Rollins heard seven or more shots fired. She indicated that the men were only about six to eight feet from one another. She observed Simmons fall to the ground and defendant flee towards Kent Street. She testified that she could not see a gun during the shooting but she saw defendant carrying a gun when he left the scene. She then exited her home,

yelled to a neighbor to call the police, and proceeded to comfort Simmons, who was unable to talk. Rollins also testified that in November 2002, she recalled hearing defendant state, in Simmons' presence, that he was "going to get everyone who had something to do with his late brother's death."

During the course of the investigation, police learned that Kena Whitlock was defendant's girlfriend. She agreed to speak to the police. In a sworn statement, Whitlock told police that a couple of days after the murder, defendant told her that he had shot someone in Newark for reasons associated with Larry's death. She and defendant discussed the possibility of him surrendering to authorities. She explained that defendant considered doing so because "he was stressing about the whole situation."

A few days after giving her statement, Whitlock attempted suicide. She subsequently returned to the police station seeking to retract portions of her statement, but was not given an opportunity to do so. At trial, Whitlock initially took the witness stand before the jury and when the prosecutor asked her where she lived, she responded, "I refuse to testify." However, she apparently changed her mind after further discussions with her attorney and testified several days later.

Whitlock testified that the earlier sworn statement she provided to police had not been a truthful statement. She indicated she lied because the police told her that if she refused to cooperate, she could be charged with murder and conspiracy. She told the jury that none of the statements she made about what defendant said to her was true.

(ECF No. 13-8 at 2–7.)

Petitioner appealed his conviction and sentence and the Appellate Division affirmed on November 30, 2009, but remanded for issues related to sentencing. (ECF No. 13-8.) The Supreme Court of New Jersey denied certification on February 25, 2010. (ECF No. 13-9 at 2.) Petitioner then filed for post-conviction relief ("PCR") which was denied by the PCR court on March 15, 2012. (ECF No. 13-14.) Petitioner appealed the denial of PCR, and the Appellate Division affirmed on March 27, 2014. (ECF No. 13-18.) The New Jersey Supreme Court denied certification on October 9, 2014. (ECF No. 13-20 at 2.) Petitioner then filed a habeas petition with this Court, which he executed on February 23, 2015, raising seven ground for habeas relief:

1. The sequential "guilty first" jury instructions and verdict sheet, told the jury in violation of *State v. Coyle*, 119 N.J. 194 (1990), to deliberate on passion/provocation manslaughter only after finding defendant guilty of murder. Furthermore, the instructions on the burden of proof were ambiguous. In one instance the judge correctly instructed the jury on the State's burden to disprove the elements of passion/provocation manslaughter. However, in other instances, including on the verdict sheet, the judge implicitly shifted to defendant the burden of proving he acted in the heat of passion from a reasonable provocation[.]

2. The admission of Kena Whitlock's prior inconsistent statements was contrary to the law of *State v. Gross*, 121 N.J. 1 (1990), and denied defendant a fair trial and his right to confrontation. (U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10)[.]

3. The court made two instructional errors by om[]ission[,] both of which were fatal to defendant's rights to due process and a fair trial. The court erred in failing to caution the jury as to the unreliable nature of testimony attesting to non-memorialized oral statements made by the defendant. The court further erred in failing to properly instruct the jury after a witness refused to testify before them.

   A. The court failed to caution the jury on the inherent unreliability of oral statements.

   B. Defendant was denied a fair trial by the court's failure to properly instruct the jury after a witness refused to testify before them.

4. The procedure for admission to defendant's trial authorize[d] by the court deprived defendant of his right to a public trial.

5. Petitioner was denied his federal and state constitutional rights to effectiveness of trial counsel.

   A. Failed to investigate[.]

   B. Failed to interpose an alibi defense.

   C. Counsel was ineffective in failing to properly object to the closure of the courtroom.

6. This matter must be remanded for an evidentiary hearing because defendant established a prima facie claim of ineffectiveness due to trial counsel[']s failure to conduct an adequate investigation, which included his not pursuing a prospective alibi witness[.]

7. This matter must be remanded because [PCR] counsel failed to investigate and/or to adequately advance all of defendant[']s claims.

(ECF No. 1-2 at 5–23.)

Respondents filed an answer in which they argue that Petitioner's claims lack merit, the claims fail to raise constitutional issues, and claim 5C is procedurally barred from habeas review. (ECF No. 13.)

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S. 634, 641 (2003). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

A federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing

*Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## III.   DISCUSSION

### A.  Ground One: Jury Instructions on Elements of Offense

In Ground One, Petitioner argues that the trial court erred in failing to express to the jury that the State bears the burden to disprove the elements of passion/provocation manslaughter. (ECF No. 1-2 at 5–7.) He further argues that the verdict sheet was flawed because it required the jury to consider passion/provocation manslaughter only after finding Petitioner guilty of murder. (*Id.*)

The Appellate Division, on direct appeal, laid out the relevant jury instructions, and rejected the claim, explaining:

> Defendant contends the court's instruction on murder and passion/provocation manslaughter required the jury to first find defendant guilty of murder before considering passion/provocation manslaughter and, in doing so, wrongfully shifted the State's burden to prove the elements of manslaughter to defendant. We disagree.
>
> . . .
>
> Clear and understandable jury instructions are essential in giving a criminal defendant a fair trial. *State v. Concepcion*, 111 N.J. 373, 379, 545 A.2d 119 (1988). Thus, the trial court has a duty to clearly instruct a jury on the law governing the case. *State v. Butler*, 27 N.J.

6

560, 595, 143 A.2d 530 (1958). The charge provided by the court must give a "comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." *State v. Green*, 86 N.J. 281, 287–88, 430 A.2d 914 (1981). In determining whether there is error in a charge, the charge must be read as a whole, and portions of a charge that are allegedly erroneous cannot be examined in isolation. *State v. Garland*, 149 N.J. 456, 473, 694 A.2d 564 (1997).

In *State v. Coyle*, 119 N.J. 194, 221, 574 A.2d 951 (1990), the Court addressed the required jury instructions that must be given where evidence in the record supports a finding of passion/provocation. The Court noted that where evidence of passion/provocation exists, the State may only obtain a murder conviction if it proves beyond a reasonable doubt that the purposeful killing was not the product of passion/provocation. *Ibid.* (citing *State v. Powell*, 84 N.J. 305, 314, 419 A.2d 406 (1980)).

Here, prior to giving full instructions on the murder charge, the court instructed the jury that

> first you are asked as to the charge of murder. You have a little shorthand reminder there [on the verdict sheet]. That in no way suggests the elements for the offense of murder. You are going to hear those set out by me in a moment. You are asked to tell us whether, given your analysis, consideration of the testimony and evidence, not guilty of murder, guilty of murder in conjunction with my instructions.
>
> You are given a direction there. Next, if you find the defendant guilty of murder, do you find that he was acting purposely or knowingly in the heat of passion . . . resulting from a reasonable provocation.

As instructed here, the court directed that the sequence of the jury's deliberation required that it first decide whether the State met its burden of proof on knowing, purposeful murder before it could consider passion/provocation manslaughter. At the time jurors were given this instruction, they had not yet received copies of the verdict sheet and the court was reading from its notes. The court was advised that the verdict sheet was not yet ready. Thus, it thereafter proceeded to instruct the jury on the elements of murder and passion/provocation manslaughter without the jurors simultaneously viewing a verdict sheet. The court's instructions proceeded as follows:

A person is guilty of murder if, one, he caused the victim's death or serious bodily injury that then resulted in death; and, second, that the defendant did so purposefully or knowingly and; third, did not act in the heat of passion resulting from a reasonable provocation.

If you find beyond a reasonable doubt that the defendant purposely or knowingly caused Andre Simmons' death, or caused serious bodily injury that then resulted in death, and that he did not act in the heat of passion resulting from a reasonable provocation, the defendant will be guilty of murder.

If, however, you find that the defendant purposely or knowingly caused death or serious bodily injury that then resulted in death, and that he did act in the heat of passion, resulting from a reasonable provocation, defendant will be guilty of passion/provocation manslaughter.

Now, in order for you to find the defendant guilty of murder, the State is required to prove each of the following elements beyond a reasonable doubt:

One, that the Defendant Harris caused Andre Simmons's death, or serious bodily injury that then resulted in his death.

Second, that the Defendant Harris did so purposely or knowingly.

And, thirdly, that the Defendant Harris did not act in the heat of passion resulting from a reasonable provocation.

Later, after addressing the first two elements of the State's burden of proof, the court proceeded to specifically charge the jury on the third element the State was required to prove[] beyond a reasonable doubt:

The third element that the State must prove beyond a reasonable doubt to find Defendant Harris guilty of murder is that Mr. Harris did not act in the heat of passion resulting from a reasonable provocation.

8

Passion/provocation manslaughter is a death caused purposely or knowingly that is committed in the heat of passion resulting from a reasonable provocation. Passion/provocation manslaughter has four factors which distinguish it from murder.

In order for you to find defendant guilty of murder, the State need only prove the absence of any one of those four elements beyond a reasonable doubt. Those four elements are:

One, there was adequate provocation.

Second, the provocation actually impassioned Defendant Harris.

Third, Defendant Harris did not have a reasonable time to cool off between the provocation and the act which caused death.

And, four, Defendant Harris did not actually cool off before committing the act which caused death.

The State must prove beyond a reasonable doubt, need only prove the absence of any one of those elements.

. . . .

If you determine that the State has proven beyond a reasonable doubt that there was not adequate provocation or that the provocation did not actually impassion Defendant Harris, or that Mr. Harris had a reasonable time to cool off, or that he actually cooled off, in addition to proving one of those four factors, if you determine that the State has proven beyond a reasonable doubt that Mr. Harris purposely or knowingly caused death or serious bodily injury resulting in death, you must find him guilty of murder.

If, on the other hand, you determine that the State has not disproved at least one of the four factors of passion/provocation manslaughter beyond a reasonable doubt, but that the State has proven

beyond a reasonable doubt that Defendant Harris purposely or knowingly caused death or serious bodily injury resulting in death, then you must find him guilty of passion/provocation murder.

Just before the court instructed the jury on the weapons offenses, the verdict sheets were ready. The court once again, albeit briefly this time, reviewed the elements of murder the State was required to prove beyond a reasonable doubt, and mistakenly gave a sequential instruction again:

> [B]efore we get into the weapons[ ] offenses, you're asked to decide whether the defendant purposely or knowingly caused the death of Andre Simmons by his own conduct.

> Not guilty of murder; guilty of murder.

> And then if you find defendant guilty of murder, do you find he was acting purposely or knowingly in the heat of passion resulting from reasonable provocation causing the death of Andre Simmons.

> Yes or no.

The court, however, then immediately provided the jury with the proper instruction on murder and passion/provocation manslaughter:

> The elements of murder that have been discussed with you, a person is guilty of murder if he first caused [sic] victim's death, or serious bodily injury that then resulted in death.

> Second, the defendant did so purposely or knowingly.

> Third, that he did not act in the heat of passion resulting from a reasonable provocation, and that suggests the answer, yes or no answer there that we're asking for.

> In order to find defendant guilty of murder, the State is required to prove the following elements beyond a reasonable doubt:

First, that defendant caused Andre Simmons' death,
or serious bodily injury that then resulted in his
death.

Second, that he did so purposely or knowingly, and I
have defined those terms for you.

Third, that defendant did not act in the heat of
passion resulting from a reasonable provocation, and
I have discussed that with you. That is the situation
where you are - you review, consider the elements
that the State, the four elements that the State, one of
which the State must disprove.

If the State disproves one element beyond a
reasonable doubt, then defendant must be found
guilty of murder, if you are satisfied that the elements
of that have been proven.

If the State cannot - has not discounted any of those
four elements, then passion/provocation
manslaughter is the verdict.

Hopefully, looking at the verdict form should set in
your mind the instructions that I have just given you.

It is clear, from a review of the entire jury charge, that the court
repeatedly made clear that defendant could only be found guilty of
murder if the State proved beyond a reasonable doubt that the
purposeful killing was not the product of passion/provocation.
*Coyle, supra*, 119 N.J. at 221, 574 A.2d 951 (citing *State v. Powell,
supra*, 84 N.J. at 314, 419 A.2d 406). Moreover, the verdict sheet
actually provided to the jurors was not inconsistent with this
instruction. Finally, at no time did any of the court's instructions on
murder and passion/provocation manslaughter shift the burden of
proof to defendant. Hence, we discern no error capable of producing
an unjust result stemming from the court's instructions on murder
and passion/provocation manslaughter.

(ECF No. 13-8 at 9–17.)

The Appellate Division's well-reasoned decision on this matter was neither contrary to nor

an unreasonable application of Supreme Court precedent. With respect to jury instructions, a

habeas court must consider "whether the ailing instruction by itself so infected the entire trial that

11

the resulting conviction violates due process [under the Fourteenth Amendment] . . . not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal citations and quotations omitted). A habeas petitioner must establish that the instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Further, it is "well established" that the instruction "may not be judged in artificial isolation," but must be viewed in the context of the overall charge and the trial record. *Cupp v. Naughton*, 414 U.S. 141, 146 (1973). However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972); *see also Smith v. Horn*, 120 F.3d 400, 416 (1997) (the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law.")

The Court has carefully reviewed the jury instructions on murder and passion/provocation manslaughter, and finds no error of constitutional magnitude in this case. The trial judge clearly instructed the jury about the State's burden of proof as to the elements of murder, more than once, and made clear that the State bears the burden to prove beyond a reasonable doubt that Petitioner did not act in the heat of passion—the third element of the offense of murder. Furthermore, with respect to the verdict sheet, the judge instructed the jury that the verdict sheet was not a replacement for his instructions on the elements of murder. (ECF No. 14-10 at 138.) While the sequential nature of the charge may initially have been somewhat confusing, the trial judge more than adequately made up for it by clearly explaining the elements of murder, and explaining the elements of passion/provocation manslaughter. The jury instructions thus did nothing "to lift the

burden of proof on an essential element of [the] offense." *See Horn, supra*, 120 F.3d at 416.
Therefore, the Court finds that the Appellate Division's decision rejecting this claim did not violate
clearly established law. Petitioner is denied relief on this claim.

### B. Ground Two: Prior Statement of Whitlock

In Ground Two, Petitioner alleges that the court erred in allowing the prior signed statement
of Keena Whitlock, one of the State's witnesses at trial—in which she stated that Petitioner had
spoken to her about the murder—to be admitted into evidence, because it was unreliable and
violated his right to confrontation. (ECF No. 1-2 at 8.) He explains that Whitlock, Petitioner's
girlfriend, who pregnant with Petitioner's child at the time of the murder, was coerced into making
a statement to the police, but later recanted. (*Id.* at 8-9.) When she ultimately testified at trial, she
denied the truth of her statements to the police. The trial court held a "*Gross* hearing" (*see infra*)
outside of the presence of the jury. At the conclusion of that hearing, the judge made the findings
required by State law and ruled that "the jury will be permitted to hear and consider the statements
purported to have been made by Miss Whitlock on February 12th, 2003 as evidenced in the Q and
A which has been marked S-43." (ECF No. 14-8 at 153.) On direct appeal, Petitioner claimed
that this ruling was erroneous, and the Appellate Division affirmed without further explanation.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with
the witnesses against him . . . ." U.S. Const. amend. VI. "The right of confrontation . . . means
more than being allowed to confront the witness physically. Indeed, [t]he main and essential
purpose of confrontation is *to secure for the opponent the opportunity of cross-examinat*ion.'"
*Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal citations and quotations omitted)
(emphasis in original). "[A] criminal defendant states a violation of the Confrontation Clause by
showing that he was prohibited from engaging in otherwise appropriate cross-examination

13

designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Id.* at 680 (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).

There is no Confrontation Clause violation, because Whitlock appeared in court, testified, and was cross-examined extensively by Petitioner's counsel. *(See* ECF No.14-8 at 214–235). *See California v. Green*, 399 U.S. 149, 162 (1970) ("For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem.").

Petitioner's claim must instead be that the trial judge erred in ruling that Whitlock's statement to the police could be admitted in evidence. The admissibility of evidence is generally a question of state law which is not cognizable under habeas review. *See Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"). To rise to the level of a constitutional violation, a state court's evidentiary error must be "of such magnitude as to undermine the fundamental fairness of the entire trial." *Larkins*, 251 F.3d at 413. The category of infractions that violate fundamental fairness is "very narrow." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

Here, the record reveals that the trial court held a *Gross* hearing to determine the reliability of Whitlock's prior sworn statement to the police. *See State v. Gross*, 577 A.2d 806 (N.J. 1990); *State v. Mancine*, 590 A.2d 1107 (N.J. 1991). Under *Gross* and *Mancine*, a witness's prior inconsistent statement is admissible under N.J. R. Evid. 63(1) if it is made under circumstances establishing its reliability and given under oath. *Gross,* 577 A.2d at 809; *Mancine,* 590 A.2d at 1115. *Gross* listed fifteen circumstances to consider, including the declarant's connection to the

matter, the persons to whom the statements were given, and the time and place where the statements were made. 577 A.2d at 810. Applying the standards of *Gross* and *Mancine*, the trial court found Whitlock's prior statement to be "inherent[ly] believab[le]," and admitted it in evidence. (ECF No. 14-8 at 148–153.) The ruling was procedurally regular and does not seem to have constituted even a state-law, let alone a federal-law, error.[1]

The trial judge's weighing of the factors under *Gross* neither violated clearly established federal law, nor rendered the trial fundamentally unfair. The judge conducted a lengthy hearing outside of the presence of the jury, Whitlock and the officers who took her statement were asked relevant questions, and the judge appropriately weighed the evidence. Petitioner has failed to demonstrate that he is entitled to relief on this claim, which therefore is denied.

### C. Ground Three: Jury Instructions

#### 1. Out-of-Court Statements

Petitioner next argues that the trial court erred in failing to instruct the jury about the inherent unreliability of trial testimony regarding a defendant's oral out-of-court statements. (ECF No. 1-2 at 12.) He refers in particular to the testimony of Patricia Simmons, Precious King, and Betty Rollins, who each testified to out-of-court statements made by Petitioner. (*Id.* at 12–13.)

Petitioner raised this claim on his direct appeal. The Appellate Division rejected it in terms that addressed both the accuracy of the witnesses' testimony and the reliability and voluntariness of Petitioner's out-of-court statements:

> [T]he court permitted witnesses Rollins, Simmons and King to testify about repeated inculpatory statements attributed to defendant. Defendant claims these witnesses were allowed to testify without accompanying instructions from the court on the "inherent weaknesses" of such statements and that consideration of these

---

[1]     Having admitted evidence of Whitlock's prior statement, the judge carefully instructed the jury as to how to evaluate her related testimony. *See* p. 21 n.2, *infra*.

statements "should be received with caution." *State v. Kociolek*, 23 N.J. 400, 421, 129 A.2d 417 (1957).

. . .

[T]he record before us does not support, as defendant claims, reversal because the court failed to give the appropriate jury instruction on the voluntariness of the statements attributed to defendant. *State v. Hampton*, 61 N.J. 250, 294 A.2d 23 (1972). In *Hampton*, the Court held that if a court determines that an inculpatory statement made by a defendant is admissible, the court must instruct jurors that they should decide whether, in view of all the circumstances, the defendant's statements are true, *id.* at 272, 294 A.2d 23, and if they find the statements are untrue, then they must treat the statements as inadmissible and disregard them for purposes of discharging their function as fact-finders on the ultimate issue of guilt or innocence. *Ibid. See also* N.J.R.E. 104(c). However, as with a court's failure to give a *Kociolek* instruction where no such instruction has been requested, reversal is only required where the failure to give a *Hampton* charge was clearly capable of producing an unjust result.

. . .

We discern no such error based upon our review of this record. . . . We are satisfied from our review of the trial court's instructions to the jury on credibility that it squarely placed before the jury not only the credibility of the witnesses' testimony, but also the reliability and voluntariness of the statements they each attributed to defendant:

> Now, in deciding the facts of this case, you must decide which witnesses to believe and which witnesses not to believe. You may believe some, all, or nothing of what a witness says. In deciding what to believe, and in considering the credibility of the witnesses, you should consider several factors.
>
> First, you should bring to this task all those skills you have developed over the years in judging the credibility of people in your daily lives.
>
> Each of you has had important experiences in your social life, in your family affairs, and in business, amongst other places, where you have to decide whether someone is telling the truth.

16

You may want to consider other factors, such as does the witness have an interest in the outcome of the case. Does the witness have some bias or prejudice for or against one side or another. How good or accurate is the witness' recollection. What was the witness' ability to know what the witness was talking about.

You may consider the demeanor of the witness. By that I mean the way the witness acted, the way the witness spoke, or the way the witness reacted to certain questions.

Is the witness' testimony reasonable when considered in the light of all other evidence that you believe. Is the witness either corroborated, or contradicted, supported, or discredited by other evidence.

Use your common sense when evaluating the testimony of a witness. If a witness told you something that did not make sense, you have a right to reject that testimony. On the other hand, if what the witness said seemed reasonable and logical, you have a right to accept that testimony.

If there are inconsistencies in a witness' testimony, or between the witness' testimony and that of another witness, you must decide what to believe. Two or more people witnessing an incident may see or hear it differently. Sometimes people forget things and sometimes people honestly believe they remember something, but it turns out to be wrong.

In weighing the effect of an inconsistency, consider whether it concerns something important or unimportant, consider if it results from an innocent error, or willful falsehood.

In doing so, you may also consider whether it was brought out in the witness' direct testimony or during cross-examination. You should also consider any explanation that the witness may have given.

Evidence, including a witness' statement prior to trial, before trial, showing that at a prior time a witness has said something which is inconsistent with the witness' testimony at the trial, may be considered by you for the purpose of judging the witness' credibility.

It may also be considered by you as substantive evidence; that is as proof of the truth of what is stated in the prior contradictory statement.

Evidence has been presented showing that at a prior time witnesses who have testified here have said something, or have failed to say something which is inconsistent with the witness' testimony at the trial.

This evidence may be considered by you as substantive evidence or proof of the truth of the prior contradictory statement or omitted statement.

However, before deciding whether the prior inconsistent or omitted statement reflects the truth, in all fairness, you will want to consider all of the circumstances under which the statement or failure to disclose occurred.

You may consider the extent of the inconsistency or omission, and the importance or lack of importance of the inconsistency or omission on the overall testimony of the witness as bearing on his or her credibility.

You may consider such factors as where and when the prior statement or omission occurred, and the reasons, if any, therefore. The extent to which such inconsistencies or omissions reflect the truth is for you to determine.

Consider their materiality and relationship to the witness' entire testimony and all the evidence in the case; when, where, and the circumstances under which they were said or omitted, and whether the reasons given for them appear to be believable and logical to you.

> In short, consider all that I have told you before about
> prior inconsistent statements or omissions.
>
> Now, you will, of course, consider other evidence,
> and inferences from other evidence, including
> statements of other witnesses, or acts of the witness
> and others disclosing other motives that the witness
> may have had to testify as the witness did; that is,
> reasons other than which the witness gave to us here
> at the trial.

Additionally, the court provided a "false in one, false in all" charge
and provided direction to the jury as to how it should weigh
discrepancies in the evidence, and in particular, inconsistent
statements.

. . .

> We therefore view the effect of the court's comprehensive
> instructions on how to evaluate the credibility of the testimony from
> these witnesses who testified about statements defendant made to
> them or in their presence, the cross-examination undertaken of the
> witnesses by defense counsel, and the challenges to the witnesses'
> credibility during defense counsel's summation, as precluding a
> finding that the court committed plain error when it failed to give a
> *Hampton/Kociolek* charge. R. 2:10-2.

(ECF No. 13-8 at 17–24.)

Petitioner's claim rests on matters of state law—in particular, the court's obligation, or not,

to give a "*Hampton/Kociolek* charge." "It is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions". *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)

"[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas

relief." *Id.* at 71–72. Instead, as noted earlier, a habeas petitioner must establish that the

instructional error "had [a] substantial and injurious effect or influence in determining the jury's

verdict." *Brecht*, *supra*, 507 U.S. at 637.

Here, the Appellate Division held that the jury instructions at the conclusion of trial were

more than sufficient to ensure that the jury was equipped to weigh the credibility of these witnesses,

19

and that the result of the trial was just. The omission of a supplemental instruction on credibility, even assuming it was erroneous under State law (which has not been established), did not rise to the level of a constitutional violation. As evidenced in the excerpt of the jury instruction above, the jurors were well aware of their responsibility to assess the truthfulness of the witnesses' testimony regarding out-of-court statements (as well as other matters). Petitioner's conviction was based on a credibility determination by the jurors, who chose to believe the State's witnesses. Petitioner has failed to show that the Appellate Division's affirmance of the conviction in this regard was contrary to, or an unreasonable application of, clearly established federal law. Relief is therefore denied on this claim.

### 2. **Whitlock's Initial Refusal to Testify**

Petitioner also argues that the trial court erred in failing to instruct the jury that it not draw any inference from Whitlock's refusal to testify. (ECF No. 1-2 at 14–15. *See also* Section III.B, *supra.*) He explains that without such an instruction, the jury may have inferred that Whitlock refused to testify because she was afraid of Petitioner. (*Id.*)

This issue was raised by Petitioner on direct appeal, and rejected by the Appellate Division:

> [T]he court directly addressed the evidence presented that Kena Whitlock, at a prior time, made a statement that was inconsistent with her trial testimony. The court instructed the jury to consider a number of factors in assessing her credibility, in particular including: the circumstances under which the statement was given, her physical and mental condition at the time she gave the statement, whether she incriminated herself or sought to exculpate herself, whether the statement was given in writing, the presence or absence of any motive to fabricate, explicit or implicit pressures, inducement or coercion, and the inherent believability or lack of believability of the statement. Additionally, because Whitlock ultimately testified, we discern no error in the court's failure to instruct the jury after her initial refusal to testify that it should draw no inferences against defendant as a result of her failure to testify. *See State v. Burns*, 192 N.J. 312, 333, 929 A.2d 1041 (2007).

(ECF No. 13-8 at 24.)[2]

The record reflects that when Whitlock was called as a witness, she initially refused to testify. (ECF No. 14-6 at 114.) The trial judge then stated to the jury: "All right ladies and gentlemen, obviously that suggests that the proceedings are going to be interrupted. . . ." (*Id.* at 115.) Days later, Whitlock ultimately agreed to testify. In her testimony, Whitlock explicitly stated that her prior statements to the police officers were false. (ECF No. 14-7 at 70.)

---

[2]     The trial judge instructed the jury as to how it should weigh Whitlock's testimony, particularly in regard to the prior statements, as follows:

> Evidence has been presented in this trial showing that at a prior time, Kena Whitlock has said something or has failed to say something which is inconsistent with her testimony at trial. You may consider this evidence, along with all the other evidence in the case in deciding whether any such statement, if made, is credible.

> You should consider any relevant factors, including Kena Whitlock's connection to and interest in the matter recorded in her prior statement; the person or persons to whom she gave the statement; the place and occasion for giving the statement; whether Kena Whitlock was then in custody, or otherwise the target of an investigation; the physical and mental condition of Miss Whitlock and the time; the presence or absence of other persons when she gave the statement which she now recants; whether Ms. Whitlock incriminated herself or sought to exculpate herself by the statement; whether the writing is in Miss Whitlock's hand, if there was a writing, or any part was in writing; the presence or absence and the nature of any interrogation; whether the sound recording or writing contains all or only a portion or summary of what Miss Whitlock said; the presence or absence of any explicit or implicit pressures, inducement, or coercion for making the statement; whether the use to which the authorities would put the statement was apparent or made to known to Miss Whitlock; the inherent believability or lack of believability of the statement; the presence or absence of corroborating evidence.

> A witness' prior inconsistent statement under police interrogation must be carefully examined and accessed in light of all the surrounding circumstances, including her interest in giving the statement at the time.

> If you decide – and we're talking about Miss Whitlock's testimony about a statement which she indicated she gave, I believe it was on February 12[th], 2003, your recall controls not mine, and then at trial, she indicated that portions of that statement were not the truth. That's what we're talking about here.

> If you decide that the statement is reliable, then you may consider it for its truth and weigh it along with all the other evidence in the case. However, if you decide that the statement is not reliable, then you ma[]y not consider if for any purpose.

(ECF No. 14-10 at 135–37.)

The Supreme Court has held that a criminal defendant's due process rights under the Confrontation Clause may be violated when "'inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination.'" *Douglas v. Alabama*, 380 U.S. 415, 420 (1965) (quoting *Namet v. United States*, 373 U.S. 179, 187 (1963)); *see also United States v. McGlory*, 968 F.2d 309, 344 (3d Cir. 1992) ("We have recognized that reversible error, on Sixth Amendment grounds, may occur where the witness' testimony adds critical weight to the prosecution's case in a form not subject to cross-examination.").

Here, however, Whitlock initially balked, but *did* ultimately testify. The jury was not left to speculate about Whitlock's motivations or other out-of-court events, because Whitlock took the stand and explained herself at length. The trial court carefully instructed the jury regarding its responsibility in assessing the credibility of witnesses and it explicitly applied those instructions to the evidence of Whitlock's prior statements. *See* p. 21 n. 2, *supra*.

The jury was able to fairly assess the credibility of Whitlock's testimony and the credibility of her prior statement to the police based on evidence introduced at trial. The Appellate Division decision rejecting this claim was not an unreasonable application of Supreme Court precedent. Petitioner is therefore denied relief on this claim.

### D. Ground Four: Public Trial

In Ground Four, Petitioner alleges that he was denied his Sixth Amendment right to a public trial. (ECF No. 1-2 at 17.) He explains that members of his family were required to show identification before entering the courtroom and that the sheriff's office conducted record checks of individuals attempting to enter the courtroom, which resulted in at least one arrest. (*Id.*) He states that the judge should have *sue sponte* declared a mistrial. (*Id.*) Petitioner raised this claim on direct appeal, and the Appellate Division rejected the claim without comment.

The Sixth Amendment guarantees a defendant the "right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . ." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (internal citations and quotations omitted.) A "party seeking to close a hearing must advance an overriding interest that is likely to be prejudiced [in the absence of closure], the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *See Waller*, 467 U.S. at 48

During jury selection the State requested additional security at trial, because shots had been fired into the home of one of the State's witnesses. (ECF No. 14-2 at 20–23.) The judge denied the request for additional security at that time. Later on the same day, the judge became aware (after the fact) that one trial spectator, Idris King, had been arrested at the courthouse on an outstanding warrants. (ECF No. 14-2 at 52.) The judge questioned the investigator and officer who made the arrest. Both stated that the arrest took place outside of the courtroom itself, and that no record checks of any other individuals had been conducted. (*Id*. at 60–65.) Additionally, the judge clarified that no members of Petitioner's family had been excluded from the trial. (*Id*. at 68–70.)

The following day, the State presented the judge with documents indicating that Petitioner was a member of the 93 N.T.G. Bloods gang. (ECF No. 14-3 at 4–9.) The State again requested additional security measures, including an officer and a metal detector placed outside the courtroom, and a requirement that everyone entering the courtroom sign in. (*Id*. at 7.) Defense

23

counsel raised no objection and requested only that the jury be instructed that such security measures are a general practice when a case has media attention. (*Id.* at 6–10.) The judge agreed to the additional security measures, and instructed the jury that the sign-in measures did not include the jury and were necessary only to verify the credentials of the press. (ECF No. 14-4 at 67–68.) Some days later, Petitioner's sister was denied access to the trial because she did not have a proper photo identification. (*Id.* at 14-6 at 6.) The trial judge then spoke with his court officer and determined that the sister had been permitted to enter the courtroom on subsequent days, and that no other problems had been reported. (*Id.* at 8–10).

Considered in light of the factors laid out in *Waller*, the state court's rejection of this claim was not unreasonable. Following a proffer that shots had been fired into a witness's home, and after evidence was later presented that Petitioner was a gang member, the judge made findings on the record that additional safety measures would benefit all parties. The security measures were minimal in scope, excluding no one but requiring only that spectators identify themselves. *See United States v. Smith*, 426 F.3d 567 (2d Cir. 2005) (finding photo identification procedure at trial did not violate *Waller*, because the procedure was narrow in scope and only constituted a partial courtroom closure); *Venable v. Johnson*, No. 15-6958, 2016 WL 6662686 at *7 (D.N.J. Nov. 10, 2016) (finding that defense counsel's assent to a courtroom closure "essentially amounts to a waiver of Petitioner's right . . .pursuant to the public trial guarantee of the Sixth Amendment.") To the extent this may be regarded as "closing" a hearing, it was reasonable, supported by findings, and within the bounds of federal law. Defense counsel acquiesced and did not object; the claim, then, faces the still higher hurdle of establishing that the trial court should have recognized the alleged error *sua sponte*.

24

For these reasons, Petitioner has failed to demonstrate that the partial courtroom closure violated his constitutional rights, and the claim is, therefore, denied.

### E. Ground Five: Ineffective assistance of Counsel

Petitioner next alleges that his trial counsel was ineffective in failing to interview Petitioner's brother, who would have provided an alibi defense, and for failing to object to the partial courtroom closure. (ECF No. 1-2 at 18.)

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687.

First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 669. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." *Id.* at 1083.

25

On a habeas challenge to a State court's denial of relief based on ineffective assistance, there is another step to the analysis. It is not enough that a federal judge would have found counsel ineffective under *Strickland*. The judge must find that the state court's application of *Strickland* was unreasonable, a higher standard. *See Harrington v. Richter,* 562 U.S. 86, 101 (2011).

### 1. Ineffective assistance: alibi witness

Judge Ryan denied PCR on the claim that defense counsel was ineffective because he failed to call Petitioner's brother Michael as an alibi witness:

> Petitioner and assigned counsel combine the two asserted inadequacies of counsel - failure to investigate an alibi - into one submission. Counsel writes:
>
>> Trial counsel had the address of Petitioner's brother who was available to testify. He chose not to interview him or interpose an alibi defense which would have aided his defense of misidentification. Trial counsel had no strategic or tactical reason for not using an alibi defense. The testimony of Michael Harris would have contradicted the State's theory that Petitioner[] was the murderer.
>
> The core of petitioner's defense was misidentification. The eyewitness, one Betty Rollins, testified at trial convincingly, based on the jury's verdict. At this late date seven years after trial, petitioner claims his brother would have furnished exculpatory alibi information. To be persuasive in a PCR setting, there must be facts produced by way of certification from the proposed witness attesting to the facts that he would offer and his willingness to testify. This prerequisite spelled out in *Cummings, supra*, 321 N.J. Super. at 170 has not been satisfied in any respect. Thus, Harris makes specific assertions unsupported by specific facts.
>
> Where a party claims that counsel was ineffective for failure to call a witness, that party's claim must be dismissed if the "witnesses have never been identified and their potential testimony has never been described. Purely speculative deficiencies in representation are insufficient to justify reversal". *Fritz, supra*, 105 N.J. at 64.

(ECF No. 13-14 at 15–16.)

The Appellate Division affirmed Judge Ryan's denial of PCR on the alibi issue as follows:

> Judge Ryan issued a fourteen-page written opinion rejecting defendant's arguments and denying his petition for PCR. We have reviewed the opinion and conclude Judge Ryan thoroughly reviewed the trial record and thoughtfully considered each claim presented by defendant. Confining our review to the issues raised on appeal, we note the judge found defendant's alibi assertions were "self-serving," "speculative," and unsupported by the identified alibi witness. The record contained no information from defendant's brother, who defendant suggested could vouch for his whereabouts the evening the victim was murdered. Consequently, there was no proffer of the alibi witness's testimony.
>
> To determine whether a defendant has established a prima facie claim of ineffective assistance, New Jersey follows the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)[.]

(ECF No. 13-18 at 4–5.)

In finding counsel's performance was not deficient, the state courts did not violate clearly established law, and were not unreasonable in their application of *Strickland*. The only evidence presented by Petitioner to support his claim was his own certification in connection with his PCR Petition, in which he stated:

> Petitioner asserts that he told trial counsel that on January 20, 2003, from 8:00 p.m. to 11:00 p.m. he was watching wrestling with Mr. Michael Harris, his brother, and his son in Newark. Petitioner advised counsel of this fact in a timely manner but counsel refused to conduct an investigation and never questioned Mr. Harris about his alibi testimony. Had Mr. Harris testified, his testimony would have refuted State star witnesses Precious King and Betty Rollins. Additionally, Mr. Harris' testimony would have supported Kena Whitlock's retraction of her statement at trial.

(ECF No. 13-10 at 8.)

As the state courts pointed out, Petitioner's claim rests on his own bare assertions, unsupported by evidence. Petitioner supplied no affidavits from his brother or any other individual

proffering testimony in support of his claim. During the PCR hearing, the judge explicitly asked defense counsel if any supporting documentation had been submitted in support of Petitioner's alibi argument and defense counsel acknowledged that none had been submitted. (ECF No. 14-13 at 5.) Because Petitioner bears the burden of establishing his entitlement to relief on each claim, and he has failed to give any support for this claim aside from his own bare-bones certification about someone else's supposed testimony, this claim must be denied. *See Price*, 538 U.S. at 641; *Harrington*, 562 U.S. at 98.

### 2. Ineffective assistance: courtroom closure

I turn to Petitioner's claim that his counsel was ineffective for failing to object to the courtroom closure. *See* Section III.D, *supra*. The state court held that this claim was procedurally barred under New Jersey law. Even setting aside the of procedural default, however, the claim would fail on the merits.

The first prong of *Strickland* requires a showing that that competent counsel would have objected to the security measures as constituting a partial courtroom closure. On the second prong of *Strickland*, the Supreme Court has held that, while the denial of a is a structural error, the defendant must still show that he was prejudiced by counsel's failure to object to the courtroom closure. *See Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017). On either prong, the necessary showing would require, at a minimum, that the objection had some merit. For the reasons expressed in Section III.D, *supra*, the trial court committed no error and the objection lacked merit.

The Petitioner therefore has not met this burden. He has failed to present any facts or reasoning to establish that counsel erred or that he was prejudiced as a result. Petitioner is denied habeas relief on this claim.

## F. Ground Six: Denial of Evidentiary Hearing

Petitioner next contends that the PCR court erred in failing to grant him an evidentiary hearing on certain ineffective assistance issues—specifically, counsel's failure to investigate an alibi defense, failure to conduct a DNA test of a hat found at the crime scene, failure to hire a ballistics expert, and failure to call a witness. (ECF No. 1-2 at 19.)

Petitioner raised his claim of denial of a hearing in his PCR appeal. The Appellate Division rejected the claim:

> Following our review, we concur with Judge Ryan's opinion and reject defendant's assertion he was entitled to present his claims of ineffective assistance by trial counsel in an evidentiary hearing. "[A] petitioner must do more than make bald assertions that he [or she] was denied the effective assistance of counsel." *State v. Cummings*, 321 N.J. Super. 154, 170 (App. Div.), *certif. denied*, 162 N.J. 199 (1999). *See also* R. 3:22–10(e)(2) (stating court shall not hold evidentiary hearing if "defendant's allegations are too vague, conclusory or speculative"). An evidentiary hearing is only necessary when a defendant's PCR petition presents material issues of disputed fact that cannot be resolved by reference to the existing record. *State v. Pyatt*, 316 N.J. Super. 46, 51 (App. Div.1998), *certif. denied*, 158 N.J. 72 (1999). A court need not hold a hearing to assess a defendant's allegations, which "are too vague, conclusory, or speculative. . . ." *State v. Marshall*, 148 N.J. 89, 158, *cert. denied*, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997).

(ECF No. 13-18 at 6.)

There is no federal right to an evidentiary hearing in a state PCR proceeding. More specifically, infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. *See, e.g.*, *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). Since errors in Petitioner's state PCR proceedings, even if presumed present, were collateral to his conviction and sentence, they could not give rise to a claim for federal habeas relief. *Id.* at 954; *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[H]abeas proceedings are not the

29

appropriate forum for [petitioner] to pursue claims of error at the PCRA proceeding."). In any event, however, these claims were properly disposed of based on the trial record. Petitioner has failed to demonstrate he is entitled to relief on this claim, which is therefore denied.

## G. Ground Seven: Ineffective Assistance of PCR Counsel

In his final ground for habeas relief, Petitioner raises a claim of ineffective assistance of PCR counsel. His PCR attorney, he says, failed to investigate newly discovered evidence, failed to raise various claims in the PCR brief, and failed to meet with Petitioner more than once. (ECF No. 1-2 at 21–23.) More specifically, Petitioner alleges that a number of years after trial, the state's key witness, Betty Rollins, was interviewed on television and gave a version of the facts surrounding the victim's death that differed from the version she testified to at trial. (*Id.* at 21.) His PCR attorney, he says, fell short of professional standards when he failed to investigate Rollins's statements further. (*Id.* at 22.)

Petitioner raised this claim in his appeal from denial of PCR. The Appellate Division rejected the claim:

> We also reject as meritless defendant's contention PCR counsel was ineffective because he failed to advance all of defendant's claims, by omitting a challenge to the identification testimony of a State's eyewitness, Betty Rollins. Defendant maintains he offered "newly discovered evidence," that is, Rollins's contradictory testimony during her television appearance on the Judge Mathis show, made "several years after trial[,]" when she stated she "held the victim in her arms and watched him die." Although this account is more dramatic than her trial testimony, it is not inconsistent and certainly does not constitute newly discovered exculpatory evidence.
>
> We first note, in his review of the PCR arguments, Judge Ryan references defendant's challenge to Rollins's identification. He specifically lists defendant's allegation that PCR counsel was ineffective for failing to secure the Judge Mathis show video of Rollins's appearance.

At trial, Rollins described her observations. She knew defendant and the victim for years as they grew up in the neighborhood. She saw defendant and the victim talking before the shooting. Once in her apartment, directly across the street from the shooting, she saw defendant attack the victim from behind as he walked away. She also described hearing seven shots, seeing defendant holding a gun, and watching defendant run from the scene. She went outside across the street to check on the victim. She stayed with him until police arrived, noting, as "he was laying there, . . . [she] bent down to look at him[.]" Rollins testified she thought "he was taking his last breaths[.]"

Defendant's cross-examination challenged Rollins's credibility and sought to cast doubt on her recollection of the events. The jury assessed these factors and reasonably relied on Rollins's unequivocal direct and cross-examination testimony identifying defendant and the victim and describing the events she observed. The television characterization of Rollins's conduct after the shooting to comfort the victim as he lay dying is immaterial to the proofs presented in support of defendant's guilt.

Therefore, we determine no basis to disturb Judge Ryan's legal conclusions, squarely grounded upon clearly delineated factual findings. *See Nash, supra*, 212 N.J. at 540 ("[W]e will uphold the PCR court's findings that are supported by sufficient credible evidence in the record."). Also, we find unavailing the claims challenging PCR counsel's performance.

(ECF No. 13-18 at 6–8.)

The Appellate Division's reasoning is persuasive. It matters little, however, because there is a fundamental threshold bar to review here.

Section 2254(i) of the federal habeas statute explicitly excludes from the scope of federal habeas relief a claim based upon ineffective assistance of PCR counsel: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." *See also Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991) (holding that there is no constitutional right to counsel in state post-conviction relief proceedings and, consequently, that ineffective assistance of counsel in state post-

conviction relief proceedings does not provide a ground for federal habeas relief).[3] Thus, insofar as Petitioner's claims of ineffective assistance of PCR counsel relates to alleged errors in failing to investigate Betty Rollin's statements on television, as well as counsel's failure to include arguments in the PCR brief, such claims must be denied pursuant to 28 U.S.C. § 2254(i).

## IV.  CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

## V.  CONCLUSION

For the reasons stated above, the Petition for habeas relief is DENIED and Petitioner is DENIED a certificate of appealability.  An appropriate order follows.

Dated: May 10, 2018

Kevin McNulty
United States District Judge

---

[3]      The limited exception to this rule, raised in *Martinez v. Ryan*, 566 U.S. 1 (2012), (in which the Supreme Court held that PCR counsel's failure to raise an ineffective assistance of trial counsel claim can establish cause for a procedural default resulting from failure to raise such a claim) has not been raised by Petitioner, and it is not apparent how *Martinez* would apply in this context.